UNRUH v. DEWOLF.

1. EVIDENCE—PAROL EVIDENCE ADMISSIBLE TO EXPLAIN AMBIGUITY.
  Where written contract for erection of house was ambiguous as
  to whether painting, grading, and fence were to be excepted
  therefrom, parol evidence was admissible to explain ambiguity.

2. SAME—PAROL EVIDENCE INADMISSIBLE WHERE NO AMBIGUITY
  EXISTS.
    Parol evidence that furnishing of French doors and finishing
    room on second floor were omitted in consideration of con-
    tractor's building double garage and brick fireplace was inad-
    missible, where written contract provided in plain and unam-
    biguous terms for furnishing all of said items.

3. DAMAGES—PROPERLY DISALLOWED IN ABSENCE OF EVIDENCE RE-
  LATING THERETO.
    Damage sustained by owner by reason of contractor's building
    different roof on house from that provided for in contract was
    properly disallowed, in absence of evidence from which such
    damage could be determined.

4. CONTRACTS—BUILDING CONTRACT—BREACH—ACCEPTANCE—WAIVER.
    Owner's taking possession of house by moving in before its
    completion did not constitute acceptance or waiver of dam-
    ages on account of contractor's failure to properly finish same.

5. SAME—WAIVER.
    That owner did not complain of unfinished condition of house
    until time for final payment arrived would not constitute
    waiver of defects, where, under contract, final payment was
    not due until house was completed and ready for occupancy.

Error to Wayne; Perkins (Willis B.), J., presid-
ing. Submitted April 9, 1930. (Docket No. 40, Cal-
endar No. 34,725.) Decided June 2, 1930.

Assumpsit by Emil W. Unruh against Theodore
DeWolf for breach of a building contract. From

verdict and judgment for insufficient amount, plaintiff brings error. Reversed, and new trial ordered.

*Harold F. Coyle,* for plaintiff.

*Frank Day Smith,* for defendant.

BUTZEL, J. Plaintiff desired to have a home erected on a lot owned by him and described in the building contract herein set forth. After looking at a number of houses he was attracted by the home occupied and built by defendant, a building contractor. Defendant agreed to build for plaintiff an exact duplicate of this home, except as otherwise specified. The contract was prepared by defendant's partner, and was executed by both parties. It is as follows:

"BUILDING CONTRACT

"Articles of agreement, made and entered into this 3rd day of March, A. D. 1924, by and between Emil W. Unruh of the city of Detroit, county of Wayne, State of Michigan, party of the first part, and Theodore DeWolf of the city of Detroit, county of Wayne, State of Michigan, party of the second part,

"Witnesseth, that the said party of the second part does hereby, for self, his heirs, executors and administrators, covenant, promise and agree that he shall and will, for the consideration hereinafter named, between this date and the 15th day of May, A. D. 1924, furnish all labor and material for the building and completion of a dwelling on lot 157 Seymour & Troester's Montclair Heights Sub'n. Said dwelling to be an exact duplicate of the dwelling owned by Theodore DeWolf and known as No. 17765 Cedar Grove Ave. except the fireplace, which is to be of brick face, also interior and exterior painting, grading and fence. Basement walls to be

of cement block, also 18 ft. x 18 ft. frame garage, for the said party of the first part, at the time and place herein mentioned, including closed in kitchen, transom window, reducing size of vestibule, enlarging linen closet, according to the plans, drawings, details, and specifications made or to be made by first party architects, the work to be done in a good, sufficient, and workmanlike manner, to the entire satisfaction of the said first party and architect, for the sum of five thousand eighty-seven ($5,087) dollars.

"It is agreed by the parties hereto that the superintending architect shall have full power to reject all material and workmanship, not in full accordance with the spirit and meaning of the plans, drawings, and specifications, which form a part of this contract, and are signed by the parties hereto.

"The party of the first part does hereby for himself, his heirs, executors and administrators, covenant and agree that, in consideration of the covenants and agreements of the said party of the second part herein contained, being by him strictly and faithfully kept and performed, he, the said party of the first part, shall and will well and truly pay, or cause to be paid, to the said party of the second part, the said sum of five thousand eighty-seven dollars ($5,087) in the following manner, to-wit: One thousand dollars when first floor joists are laid; one thousand dollars when roof is on building; sixteen hundred dollars when building is plastered; fourteen hundred eighty-seven dollars when building is finished and ready to occupy.

"In witness whereof the parties hereto have hereunto set their hands and seals, the day and year first above written.

"In presence of

"JAMES W. CAMPBELL.

"H. F. LaHOUSSE.

"EMIL W. UNRUH (SEAL).

"THEO DeWOLF    (SEAL)."

Notwithstanding the fact that the contract provided that the work was to be done to the satisfaction of both plaintiff and the architect, the record does not show that an architect was employed. Defendant delayed completion of the construction of the house until the latter part of August, a period of about three and one-half months after the time specified in the contract. Plaintiff claims he moved in before the house was completed, and that he was forced to do so on account of the fact that he had given up his former home and had no other place to which to take his family. Plaintiff brought suit for an amount in excess of the final payment that would have been due defendant had he properly fulfilled the contract. The plaintiff claims that the house was neither properly built nor completed; that there was no interior or exterior painting, grading, or fence; that the basement walls were improperly built; that the concrete had crumbled both in the basement and the driveway; that the house did not contain a finished room on the second floor nor French doors, as in the model house; that the roof was so defective that it would have to be torn down; and that there were other minor omissions and defects for which plaintiff claimed the right to recover. The trial court allowed plaintiff $178, and costs, for a few minor items, but specifically disallowed certain larger claims. Plaintiff on appeal claims error on account of such disallowance.

Plaintiff claimed damages because he was obliged to do the interior and exterior painting, grade the lot, and build a fence. The contract reads in part as follows:

"Said dwelling to be an exact duplicate of the dwelling owned by Theodore DeWolf and known as

No. 17765 Cedar Grove Ave. except the fireplace, which is to be of brick face, *also interior and exterior painting, grading and fence.*"

There is ambiguity in the use of the word "also," for it is not clear whether the italicized words following it are items to be excepted or included. The trial court held that painting, grading, and fence were to be excepted from the contract, and were to be taken care of by plaintiff, who was a painter. It was not error to introduce parol evidence to explain the ambiguity.

Defendant's house at 17765 Cedar Grove avenue contained French doors and a finished room on the second floor. The house built by defendant for plaintiff lacked both these items. There was testimony offered by defendant to show that the finishing of the room on the second floor was omitted in consideration of defendant's building a double garage, 18 ft. x 18 ft., instead of a single one like the one on defendant's lot, and that the French doors were traded for a brick fireplace. Plaintiff denied this. The contract in these respects was plain and unambiguous. It provided for an 18 ft. x 18 ft. garage, and French doors. Under the written contract, defendant was obliged to finish the room on the second floor, build a garage 18 ft. x 18 ft., build a brick fireplace, and furnish French doors. Parol testimony may not be introduced to vary a written contract under these circumstances. It was error to refuse plaintiff's claim for damages on account of these items.

Plaintiff claims damages on account of the improper construction of the roof. He claims it sags; that it had to be propped up upon complaint of the building inspector; and that the lumber used by defendant was 2 x 4 spliced together, instead of 2 x 8,

etc. There was testimony to the effect that the roof was in first-class condition and did not sag. The roof was built in 1924 and the case heard in 1928—almost four years later. In the meantime the roof had been serving its purpose. The plaintiff claimed damages for the cost of erecting a new roof, but the court properly held, from the proofs, that the roof was not in such condition that it would have to be torn down and rebuilt. He further held that the measure of damages was not what the cost of a new roof would be, but the difference in value between a house with a roof such as defendant had on his own home and one such as he had built for plaintiff. The court held that as there was no showing as to what this difference amounted to, plaintiff's claim could not be allowed. Inasmuch as the case must be sent back for retrial on account of other errors, plaintiff will have an opportunity to show damages, if any exist.

The lower court also held that, inasmuch as plaintiff took possession of the house, he thereby waived damages on account of defendant's failure to finish the room on the second floor and to furnish French doors. There is no testimony whatsoever that plaintiff accepted the house in the condition in which it was turned over to him. On the contrary, it was shown that plaintiff repeatedly protested vigorously in regard to the defects. Defendant claims that no complaint was made by plaintiff until the time arrived for the making of the third and final payment under the contract. This would not show a waiver on plaintiff's part, as there was nothing due from the time the building was plastered until it was completed and ready for occupancy. Plaintiff's taking possession of the house was proper, and the testimony shows that it did not

constitute a waiver of his rights, or an acceptance. In *Hanley* v. *Walker*, 79 Mich. 607, 619 (8 L. R. A. 207), the rule is stated as follows:

"When a person contracts with another to build, or to do some portion of the work in constructing buildings, upon real estate belonging to the owner of such real estate, his taking possession after the other has left the premises cannot be construed as an unequivocal acceptance, although he thereby takes possession of, and appropriates to his use and benefit, the labor or materials of the contractor. He must do so, as a matter of necessity, in many cases, or suffer the property to stand idle and unused, to the great detriment of all parties, and especially so of the owner. The most that can be said, in such cases, is that the act of the party, and all the circumstances, may be taken into consideration in the determination of the question whether there is an implied waiver of the condition precedent. Under the testimony appearing in this record, the fact of the defendant's taking possession was not such an acceptance as relieved the plaintiffs from the terms and condition of the contract requiring them to obtain the architect's certificate before they were entitled to payment."

There is nothing in the record to show that plaintiff at any time accepted the house as being completed in accordance with the contract, or that he waived the defects.

The errors claimed in regard to the other items are similar to the ones discussed, and should not arise on a new trial.

The judgment is reversed, with costs to plaintiff, and the case is remanded for a new trial.

WIEST, C. J., and CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.